914 F.2d 1495
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
James LANDRUM, Defendant-Appellant.
 No. 90-5253.
 United States Court of Appeals, Sixth Circuit.
 Sept. 21, 1990.
 
 BEFORE KENNEDY and RALPH B. GUY, Jr., Circuit Judges, and BAILEY BROWN, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 Defendant James Landrum appeals his conviction for conspiring to distribute and to possess with intent to distribute cocaine, attempting to possess with the intent to distribute cocaine, and using the United States mail to promote an unlawful activity. Defendant raises several issues in this appeal: (1) whether the testimony of a co-conspirator required corroboration; (2) whether the trial court erred in allowing evidence of prior arrests; (3) whether the trial court erred in allowing testimony that defendant often carried firearms; (4) whether the trial court erred in allowing testimony that defendant threatened his co-conspirator; and (5) whether the trial court erred in sentencing defendant as a leader or organizer rather than as a minor participant.
 
 
 2
 In August 1989 postal inspectors in Chattanooga, Tennessee, intercepted a package mailed by Frank Sims from Los Angeles, California. After obtaining a search warrant the inspectors opened the package and found that it contained crack cocaine. They notified the addressee, Barbara Grayson, that the package had arrived. Barbara Grayson's daughter, Valerie Grayson, for whom the package was actually intended, arrived at the post office to pick up the package and was arrested. During questioning Grayson agreed to cooperate with the police. She told them that defendant James Landrum had instructed her to pick up the package and deliver it to him. She testified at trial that Landrum was the leader of a cocaine distribution ring that he ran out of the Westside Housing Projects in Chattanooga. Other than herself, she testified that she knew of six people who were involved in the operation.
 
 
 3
 The investigators instructed Grayson to contact Landrum and arrange a time and place to meet him in order to deliver the package. She phoned Landrum, who suggested that they meet in the rear of a school near the Westside Housing Projects. Grayson wore a transmitter when she went to meet Landrum, which permitted the investigators to hear and record their conversation. That conversation was short and ambiguous. During it, Landrum stated that he did not know what was in the package. The officers who had the meeting under surveillance testified that Landrum took the package, but then dropped it and fled when they approached to arrest him. In his effort to avoid arrest he vaulted over a police car and a fence.
 
 
 4
 When police searched Landrum they found a key to a room at the Kings Lodge Motel. The room was searched and possessions belonging to Landrum were found, as well as a box of .44 caliber magnum handgun ammunition with six rounds missing. Landrum had checked into the hotel with another man, Eric Moore, several days before. Several phone calls had been made to southern California from his room, and fifteen to twenty calls were received per hour.
 
 
 5
 Police also searched an apartment at the Westside Housing Projects which was allegedly being used by Landrum. There they found several scales with a white residue which later tests showed to be cocaine. They also found a form which listed Landrum's prior arrests and dates on which he posted bail.
 
 
 6
 Subsequent to Landrum's arrest he was taken to the Hamilton County Jail. There he came into contact with Valerie Grayson, who was also being held there. A Tennessee Bureau of Investigation agent testified at trial that as he and Grayson passed by Landrum's cell, Landrum threatened to cut Grayson's throat.
 
 
 7
 A police officer testified at the trial that in April 1989 he pursued Landrum, who was running away from a location where three gun shots were fired in the Westside Housing Projects. Before Landrum was apprehended he discarded a bag which was later recovered and was found to contain twenty-two bags of marijuana, one gram of crack cocaine and a large amount of cash. Grayson testified that Landrum was often heavily armed. The District Court also allowed Landrum and his wife to be questioned about a previous arrest in Arizona during which Landrum allegedly lied to police.
 
 
 8
 Landrum was convicted by a jury on all three counts: conspiring to distribute and possess with the intent to distribute cocaine base; aiding and abetting in an attempt to possess with the intent to distribute fifty grams or more of cocaine base; and use of the United States mail to further the unlawful possession with the intent to distribute cocaine. The District Court found that under U.S.S.G. Sec. 3B1.1 Landrum was an organizer or leader in a criminal activity involving five or more people. The District Court therefore made a four-level upward adjustment and sentenced Landrum to 360 months.
 
 
 9
 Landrum claims that there was insufficient evidence to support his conviction because without corroboration, the testimony of co-conspirator Valerie Grayson was not enough to convict him.
 
 
 10
 [T]he standard of review for claims of insufficient evidence is:
 
 
 11
 "whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."
 
 
 12
 United States v. Gallo, 763 F.2d 1504, 1518 (6th Cir.1985) (emphasis in original) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)), cert. denied, 474 U.S. 1068 (1986).
 
 
 13
 This Court's role is not to determine whether Grayson was believable. The determination of credibility of witnesses, even co-conspirators, is within the province of the jury alone. "[T]he uncorroborated testimony of an accomplice may support a conviction under federal law." Gallo, 763 F.2d at 1518. See also Takacs v. Engle, 768 F.2d 122, 127 (6th Cir.1985) ("It is not irrational to rely on uncorroborated accomplice testimony, and a rational trier of fact could therefore have found [defendant] guilty beyond a reasonable doubt based solely on [a co-conspirator's] testimony."). The jury was entitled to believe Grayson's testimony, despite the fact that she was defendant's co-conspirator. There was sufficient evidence to convict appellant.
 
 
 14
 Landrum also argues that the District Court erred in admitting evidence of his prior crimes. The District Court allowed testimony concerning the April 1989 incident at the Westside Housing Projects, and an arrest that took place in Arizona. In order to determine whether the evidence was properly admitted, it must be analyzed under Federal Rules of Evidence 403 and 404. Rule 404(b) forbids evidence of prior crimes or bad acts if it is introduced to prove that the person acted in conformity with those prior acts. Under Rule 403, the testimony is properly allowed only if it is both admissible for a proper purpose and its probative value is not substantially outweighed by the danger of unfair prejudice.[1] Defendant claims that the evidence was admitted for an improper purpose under Rule 404(b) and that its probative value was substantially outweighed by its prejudicial effect under 403.
 
 
 15
 "Our review of a district court's ruling under Rule 404(b) is limited. We will reverse a district court's 404(b) ruling only upon a finding of abuse of discretion." United States v. Acosta-Cazares, 878 F.2d 945, 948 (6th Cir.) (citation omitted), cert. denied, 110 S.Ct. 255 (1989). The evidence of the incident at the Westside Housing Projects, however, was not admitted to show conformity, but instead, was admitted to rebut Landrum's defense that he did not know what was contained in the package. "In defending himself in this way, [defendant] put in issue his intent or motive in accepting the money and drugs." United States v. Benton, 852 F.2d 1456, 1467 (6th Cir.), cert. denied, 488 U.S. 993 (1988). The evidence was introduced to show that he had knowledge of the contents of the package and that he had the intent to distribute the cocaine. "Rule 404(b) ... protects against the introduction of extrinsic act evidence when that evidence is offered solely to prove character." Huddleston v. United States, 485 U.S. 681, 687 (1988). This Court has held, however, that evidence of other crimes may be introduced to prove intent or knowledge, particularly to rebut the defense's claim of lack of knowledge. See United States v. Robinson, 904 F.2d 365 (6th Cir.1990); Acosta-Cazares, 878 F.2d 945; Benton, 852 F.2d 1456. The prosecution was entitled to introduce evidence to rebut Landrum's claim that he lacked any knowledge of the contents of the bag and that he lacked any intent to distribute those contents.
 
 
 16
 The issue remains, however, as to whether the probative value of the evidence was substantially outweighed by its prejudicial effect. The standard of review for this issue is also one of abuse of discretion. See Benton, 852 F.2d at 1467. Evidence of prior arrests is more likely to have a prejudicial effect than other types of evidence. We cannot, however, say that the District Court abused its discretion in admitting the evidence of the incident at the Westside Housing Projects.
 
 
 17
 The evidence concerning defendant's prior arrest in Arizona, which was admitted to test credibility is more questionable. This Court, however, cannot consider this issue de novo. Defendant failed to object when this evidence was admitted. Under Federal Rule of Criminal Procedure 51, "failure to raise an objection at trial prevents its consideration on appeal." United States v. Cardinal, 782 F.2d 34, 36 (6th Cir.) (citing Steagald v. United States, 451 U.S. 204, 211 (1981)), cert. denied, 476 U.S. 1161 (1986). See also United States v. Mendez-Ortiz, 810 F.2d 76, 78 (6th Cir.1986). This Court, therefore, may reverse only if the District Court's failure to strike the testimony constituted plain error. United States v. Causey, 834 F.2d 1277, 1281 (6th Cir.), cert. denied, 486 U.S. 1034 (1988). Allowing the questioning did not constitute plain error. Defendant is not entitled to a new trial on this issue.
 
 
 18
 Defendant argues next that the evidence that he often possessed firearms was improperly admitted. Defendant did not possess a firearm when he was arrested, and was not charged with any offense involving firearms. The prosecution, however, argues that the evidence was properly introduced because possession of firearms is a "tool of the trade" of drug dealing.
 
 
 19
 This Court has held in drug cases that because "the guns tend to prove [the defendant's] intent to promote and protect the narcotics conspiracy, the evidence of the firearms is relevant and admissible under Rule 401." United States v. Marino, 658 F.2d 1120, 1123 (6th Cir.1981). It was not error to allow the testimony concerning defendant's regular possession of firearms.
 
 
 20
 The evidence that Landrum threatened his co-conspirator, Valerie Grayson, was properly admitted. "[E]vidence that defendant attempted to bribe and threatened a witness, is admissible to show consciousness of guilt." Mendez-Ortiz, 810 F.2d at 79. The evidence does not violate Rule 404(b) because it "tends to establish consciousness of guilt without any inference as to the character of the [defendant]...." Id. The probative value of the evidence that defendant threatened Grayson was also not outweighed by the possible unfair prejudice and therefore satisfies the test under Rule 403.
 
 
 21
 Finally, Landrum argues that he should have been sentenced as a minor participant under U.S.S.G. Sec. 3B1.2 rather than as an organizer. There was, however, ample evidence for the District Court to conclude that Landrum was an organizer. Valerie Grayson testified that Landrum was the leader of the cocaine distribution ring. It was not improper for the District Court to consider this evidence for sentencing. "Since due regard must be given to the trial court's assessment of the credibility of witnesses, we find that the district court's conclusion that [defendant] was 'an organizer, leader, manager or supervisor' was not clearly erroneous." United States v. Barrett, 890 F.2d 855, 868 (6th Cir.1989) (citations omitted). The defendant's conviction is therefore AFFIRMED.
 
 
 
 [1]
 Fed.R.Evid. 403 reads in part:
 Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice....